IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SANDRA J., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 4:24-CV-1043-BK |
| | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
|     DEFENDANT. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 636(b) and the parties' consent to proceed before the undersigned United magistrate judge, Doc. 2, Doc. 7, the Court now considers this appeal of the denial of Plaintiff's application for Social Security disability benefits. For the reasons stated here, the Commissioner's decision is **REVERSED**, and this case is **REMANDED** for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of the Commissioner of the Social Security Administration's ("Commissioner") final decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). Doc. 1.

In December 2021, Plaintiff filed her application for DIB, alleging a period of disability beginning in May 2019 due to Graves' Disease, lupus, low vision, thyroid eye disease, and multiple auto immune disorders. Doc. 8-1 at 115. Plaintiff's claim was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 1.

**B. Factual History**

Plaintiff, who was 46 years old at the alleged onset of her disability, has at least a high school education and past relevant work as a school secretary and administrative assistant. Doc. 8-1 at 47, 110, 124, 265. Plaintiff's relevant medical history, dating from 2018 to 2023, reflects diagnoses of Graves' disease, thyroid eye disease, hypothyroidism, and Sjogren's syndrome.[1] Doc. 8-1 at 354, 423; Doc. 8-2 at 278. The records further show Plaintiff's consistent reports of diplopia (double vision) and proptosis (bulging of the eyes), among other symptoms. *See, e.g.* Doc. 8-1 at 357, 501, 566.

**C. Medical Opinion Evidence**

In May 2019, Plaintiff presented to neuro-ophthalmologist Dr. Shannon C. Lynch, M.D., for a consultative examination. Doc. 8-1 at 559. Plaintiff reported worsening double vision, particularly in her right gaze. Doc. 8-1 at 559. Upon examination, Dr. Lynch noted Plaintiff had left hypotropia[2] without diplopia and that Plaintiff's proptosis and lid retraction were stable, though worse than the year prior. Doc. 8-1 at 562. The following month, Dr. Lynch noted in an email that Plaintiff would have difficulty obtaining disability based on her eye findings alone because Plaintiff's acuity measured "near normal" and her "[d]iplopia does not count for much disability since it can be resolved by closing one eye." Doc. 8-1 at 556.

---

[1] Although Plaintiff alleged additional physical impairments related to her autoimmune disorders, she challenges only the ALJ's evaluation of her visual limitations. *See* Doc. 11 at 4-7. Accordingly, the Court focuses on the medical records and evidence pertaining to Plaintiff's alleged visual impairment.

[2] *See* https://www.merriam-webster.com/medical/hypotropia (defining hypotropia as "strabismus in which the line of vision of one eye turns downward") (last visited March 26, 2026).

In June 2019, Plaintiff began orbital radiation therapy to treat her thyroid eye disease. Doc. 8-1 at 557. Prior to initiating therapy, the oncologist noted moderate proptosis, significant restriction of lateral gaze bilaterally, problems with downward gaze, and obvious deconjugated gaze associated with diplopia. Doc. 8-1 at 556.

In October 2019, following completion of radiation therapy, Plaintiff reported worsening diplopia in all gazes, including forward gaze. Doc. 8-1 at 471. Plaintiff also reported that she could not read or work on the computer without significant eye pain and felt unable to drive safely except for short periods. Doc. 8-1 at 471. However, she noted that she "patch[ed] her eye occasionally . . . to drive without double vision." Doc. 8-1 at 471.

In June 2020, Plaintiff presented to ophthalmologist Dr. Zev Shulkin, M.D., with concerns about her double vision. Doc. 8-2 at 34. She reported that her diplopia was worse when at work, driving, outdoors, reading, and using a computer; however, she stated that it was present only when both eyes were open. Doc. 8-2 at 34. Plaintiff began receiving infusions of the medication Tepezza to treat these symptoms. Doc. 8-2 at 36. Although she initially reported improvement in her symptoms, she again reported double vision, blurred vision, proptosis and a pressure sensation in the fall of 2021 and was prescribed a second round of Tepezza. Doc. 8-2 at 318-319, 328-32. Plaintiff reported minimal or no symptoms in March 2022, however, by August 2022, she again reported double vision and bulging eyes. Doc. 8-2 at 328-32, 533.

In September 2021, Dr. Shulkin opined that Plaintiff could work zero days a week due to her symptoms. Doc. 8-2 at 646. In December 2022, March 2023, and December 2023, he also opined that Plaintiff was not able to drive. Doc. 8-2 at 393, 506, 509. In June 2023, Plaintiff

received muscle correction surgery on her left eye.  Doc. 8-2 at 579.  Following the surgery, Plaintiff continued to report double vision.  Doc. 8-2 at 15.

### D. Hearing Testimony

#### i. Plaintiff's Testimony

At the 2024 administrative hearing, Plaintiff testified that she stopped working in 2019 because she could not see straight and had to close one eye due to her thyroid eye disease.  Doc. 8-1 at 64.  She also averred that she has "hardly any peripheral vision" and when she moves her head from left to right it causes double vision and a distortion of her whole view.  Doc. 8-1 at 62. She testified that she could not see clearly enough to use a computer and that if she tries to focus on it, she gets extreme eye strain.  Doc. 8-1 at 65.  She stated that, if she were focusing on something, she would have to take a break at least once an hour to rest her eyes.  Doc. 8-1 at 73.

Plaintiff further averred that glasses do not correct the problems with her vision.  Doc. 8-1 at 65-55.  She stated that she has difficulty seeing the television from 20 to 25 feet away and that she could not see the eye chart at her most recent ophthalmology appointment even while wearing her glasses.  Doc. 8-1 at 66.  Plaintiff testified that, due to her poor vision, her doctors have prohibited her from driving.  Doc. 8-1 at 62.

Plaintiff also testified that, while she saw initial improvement with Tepezza treatment, it was temporary.  Doc. 8-1 at 67.  She stated that after her first round of treatment, she basically "went back to where [she] was."  Doc. 8-1 at 67.  She further averred that it was unusual to be prescribed a second round of Tepezza treatment, and that her improvement from the second round was also "short-lived."  Doc. 8-1 at 67.

4

*ii. Vocational Expert Testimony*

A vocational expert ("VE") also testified at the administrative hearing. Doc. 8-1 at 74. The VE testified that an individual with Plaintiff's education and work experience who is limited to sedentary work; frequent bilateral handling, fingering, and feeling; occasional climbing of ramps or stairs, balancing, stooping, kneeling and crouching; and is precluded from climbing ladders, ropes, or scaffolds, crawling, and driving as part of the job, could perform Plaintiff's past work. Doc. 8-1 at 75-76. However, the VE testified that if the same individual were further limited to only occasional near and far visual acuity, they would be precluded from performing Plaintiff's past work. Doc. 8-1 at 78.

**E. The ALJ's Findings**

Following the administrative hearing, the ALJ issued his Hearing Decision utilizing the five-step sequential evaluation set forth in 20 C.F.R. § 416.920 in determining whether Plaintiff was disabled. At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024, and had not engaged in substantial gainful activity since May 31, 2019. Doc. 8-1 at 36. At step two, the ALJ determined that Plaintiff had severe impairments of thyroid eye disease, hypothyroidism, Sjogren's syndrome, osteoarthritis of the bilateral feet, knees, and hands, degenerative disc disease of the lumbar spine, and obesity. Doc. 8-1 at 36. However, the ALJ further found that none of Plaintiff's impairments, singularly or in combination, met or medically equaled any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Doc. 8-1 at 37.

At step three, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform "sedentary work . . . except she is limited to frequent handling, fingering and feeling

5

bilaterally; occasional climbing of ramps or stairs, balancing, stooping, kneeing, and crouching; is precluded from climbing ladders, ropes, or scaffolds and crawling; and is precluded from driving as part of the job." Doc. 8-1 at 38.

Relying on the VE's testimony, the ALJ found at step four that Plaintiff could perform her past relevant work as a school secretary. Doc. 8-1 at 47. Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period and denied her claim for benefits. Doc. 8-1 at 47.

## II. APPLICABLE LAW

The definition of disability under the Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner utilizes a sequential five-step inquiry: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi,* 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden on the first four steps. *Id.* (citation omitted). If the claimant meets his burden, the burden then shifts to the Commissioner to "prove the claimant's employability." *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal

standards when evaluating the evidence." *Taylor v. Astrue,* 706 F.3d 600, 602 (5th Cir. 2012). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (internal citations and quotation marks omitted).  The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005).  A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin,* 820 F.3d 776, 779 (5th Cir. 2016) (cleaned up).

## III. ANALYSIS

On appeal, Plaintiff argues that the ALJ erred by failing to include visual limitations caused by her diplopia in the RFC and in the hypotheticals posed to the VE.  Doc. 11 at 5-6.  She contends that although the ALJ recognized that she suffers from double vision—which may require her to close or cover one eye for portions of the workday—the ALJ failed to adequately account for this limitation at steps three and four of his analysis.  Doc. 11 at 5.

Defendant responds that the RFC sufficiently accounted for this limitation because the ALJ found that Plaintiff's diplopia could easily be managed during the workday and therefore only precluded her from driving.  Doc 17 at 5.  Because the RFC included a driving restriction, which was incorporated in the ALJ's first hypothetical to the VE, Defendant argues that the ALJ properly relied on the VE's testimony in finding that Plaintiff was not disabled.  Doc. 17 at 8-10.

The RFC assessment is based on "all of the relevant evidence in the case record,"

including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations.  SSR 96-8p, 61 Fed. Reg. 34,477 (July 2, 1996), 1996 WL 362207.  As factfinder, the ALJ has the sole responsibility for weighing the evidence and determining the relative weight to be given it.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  The ALJ is not required to incorporate limitations into hypothetical questions posed to the VE or into the RFC finding that he did not find to be supported by the record.  *Scott v. Comm'r, Soc. Sec. Admin*, No. 4:20-CV-1136, 2022 WL 4240888, at *5 (N.D. Tex. Sept. 14, 2022) (Cureton, J.) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)); *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002).  Nevertheless, in assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p, 61 Fed. Reg. 34,477 (July 2, 1996), 1996 WL 362207.

Once an individual's functional limitations or restrictions are identified, Social Security Ruling 96-8p provides that such limitations "must be expressed in terms of work-related functions."  *Id.*  In other words, the ALJ must consider the "total limiting effects" of an impairment on the claimant's "ability to perform work activity on a regular and continuing basis."  *Harney v. Colvin*, No. 4:12-CV-515, 2013 WL 4774128, at *13 (N.D. Tex. Sept. 5, 2013) (Means, J.) (citing 20 C.F.R. § 416.945).

Here, the record contains undisputed evidence that Plaintiff suffers from double vision as a symptom of her thyroid eye disease.  Indeed, although the ALJ explicitly rejected Plaintiff's complaints of light sensitivity, poor visual acuity, and ocular headaches as inconsistent with the

8

objective medical evidence, he appears to credit her consistent reports of double vision, which were repeatedly documented in the medical record. *See* Doc. 8-1 at 46 (noting reports of double vision, even with some improvement with infusion treatments, use of glasses, and surgery on the lids and eye muscles). Despite acknowledging Plaintiff's thyroid eye disease and double vision as a severe impairment, however, the ALJ concluded that it only precluded her from climbing ladders, ropes, or scaffolds and from driving as part of the job. Doc. 8-1 at 45.

In reaching this conclusion, the ALJ relied on Plaintiff's testimony that she stopped driving due to double vision, which he found consistent with Dr Shulkin's repeated reports that she was unable to drive. Doc. 8-1 at 45 (citing Doc. 8-2 at 393, 506, 509). He also found that this evidence aligned with Dr. Lynch's note that Plaintiff's diplopia "could be resolved by closing one eye," because, he reasoned, "closing one eye would be unsafe while driving." Doc. 8-1 at 45.

Plaintiff argues that, although the ALJ implicitly acknowledged her need to close one eye as a limitation, he failed to adequately evaluate the impact of this limitation on her functioning during the workday. Doc. 11 at 6. The Court agrees.

Social Security Ruling 96-8p specifically provides that, "in assessing RFC for an individual with a visual impairment, the adjudicator must consider the individual's residual capacity to perform such work-related functions as working with large or small objects, following instruction, or avoiding ordinary hazards in the workplace." 1996 WL 362207; *see also* 20 C.F.R. § 404.1545(d) (recognizing that "impairment(s) of vision . . ., may cause limitations and restrictions which affect other work-related abilities"). The ALJ did not dispute Plaintiff's testimony that her diplopia causes distortion which, at times, requires her to close one

eye. Doc. 8-1 at 44, 63. Nonetheless, the ALJ's decision wholly fails to address how this limitation affects her ability to perform *any* basic work functions. Doc. 8-1 at 63. Because visual impairments such as strabismus and diplopia may affect depth perception and the ability to navigate a work environment, this omission was error. *See, e.g., Norris v. Apfel*, No. 99-6167, 2000 WL 504882, at *3 (10th Cir. Apr. 28, 2000) (holding that an ALJ erred by failing to address strabismus, which can cause diplopia or loss of vision in the affected eye, as such impairments "surely" affect the claimant's ability to walk and carry things safely in the workplace).

Defendant contends that the absence of further limitations reflects the ALJ's finding that Plaintiff's diplopia imposed no additional work-related restrictions. Doc. 17 at 9. In support of this argument, Defendant points to the fact that the ALJ rejected Dr. Shulkin's opinion that Plaintiff could work zero hours, while he repeatedly relied on Dr. Lynch's statement that Plaintiff's diplopia did not count for much disability since it could be resolved by closing one eye. Doc. 8-1 at 44-45. As both Defendant and the ALJ acknowledge, however, Dr. Shulkin's notes did not address whether Plaintiff's diplopia resulted in any functional limitations other than her ability to drive. Doc. 8-1 at 45; Doc. 17 at 9 (citing Doc. 8-2 at 556, 646). Nor did Dr. Lynch opine as to whether, or to what extent, Plaintiff's need to close one eye affects her functional capacity.[3] *See* Doc. 8-1 at 557. Accordingly, even if the decision is read as

---

[3] To be sure, in the single email on which Defendant relies, Dr. Lynch notes that obtaining disability would be difficult based on Plaintiff's diplopia alone because "[m]ost visual disability . . . comes from loss of acuity," while "[d]iplopia does not count for much[.]" Doc. 8-1 at 557. However, such statement appears to reflect a generalized observation, rather than an assessment Plaintiff's functional abilities. Doc. 8-1 at 566. This is underscored by Dr. Lynch's concluding remark that "[i]t is up to the people at the disability office to approve or deny," indicating that

concluding—based solely on Dr. Lynch's statement—that Plaintiff had no additional functional limitations, the Court cannot find a logical bridge between the evidence and that conclusion. *See Price v. Astrue*, 401 F.App'x 985, 986 (5th Cir. 2010) (holding that the ALJ "must build an accurate and logical bridge between the evidence and the final determination."); *Hickey v. Astrue*, No. 4:09-CV-280, 2010 WL 3835113, at *11 (N.D. Tex. Aug, 2, 2010) (Cureton, J.) *rep. & rec. adopted,* 2010 WL 3835109 (N.D. Tex Sept. 30, 2010) (noting that while "[t]he ALJ is permitted to draw reasonable inferences from the evidence in making his decision, . . . presumptions, speculation, and supposition do not constitute evidence.").

This deficiency carries through to the determination at step-four of the ALJ's assessment. In determining that Plaintiff was capable of performing her past relevant work, the ALJ relied solely on the VE's testimony that an individual of Plaintiff's age, education, and the RFC identified in the ALJ's first hypothetical question, could perform work as a school secretary. Doc. 8-1 at 47. The ALJ's first hypothetical, like the RFC identified in his decision, included a prohibition from driving. Doc. 8-1 at 76. However, it did not include any visual limitations resulting from Plaintiff's thyroid eye disease, diplopia, or any other impairment. *See* Doc. 8-1 at 75-76.

Although an ALJ need not rely on a VE's testimony to reach a conclusion at step four of the evaluation process, 20 C.F.R. § 404.1566(e), in any case in which the ALJ relies on hypothetical questions, they must comply with the law. *Piccolella v. Astrue*, No. 3:09-CV-696, 2010 WL 1051045, at *5 (N.D. Tex. 2010) (Lynn, J.). To meet this standard, hypothetical

---

she was commenting about how such claims are evaluated, not opining that Plaintiff has no functional limitations.

questions must reasonably incorporate all disabilities recognized by the ALJ and supported by the record, and the claimant must be afforded a fair opportunity to correct any deficiencies in the hypothetical. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). If an ALJ's decision is based on the VE's answer to a defective hypothetical, "the decision is not substantially justified." *Piccolella*, 2010 WL 1051045, at *4 (citing *Boyd*, 239 F.3d at 708).

As outlined supra, the ALJ concluded that Plaintiff suffers from thyroid eye disease and diplopia. Doc. 8-1 at 38, 45-46. In posing hypothetical questions to the VE, the ALJ was thus required to reasonably include all limitations related to these disabilities. *Boyd*, 239 F.3d at 707. Although the ALJ recognized Plaintiff's occasional need to close one eye to alleviate her diplopia, he did not include this limitation in any of his hypothetical questions to the VE and it is not apparent that the hypothetical preclusion from driving sufficiently incorporates such limitation. *See* Doc. 8-1 at 75-78. Because the ALJ failed to reasonably incorporate all recognized limitations, the hypothetical questions were deficient. *See, e.g., Eastham v. Comm'r of Soc. Sec. Admin*, No. 3:10-CV-2001, 2012 WL 691893, at *8-9 (N.D. Tex. Feb. 17, 2012) (hypothetical question was deficient where it failed to incorporate disabilities that the ALJ had previously recognized but did not include in the ultimate RFC determination).

Defendant argues that Plaintiff had the opportunity to cross-examine the vocational expert on this issue, but that neither she nor her representative asked a single question about whether closing her eye for parts of the day could impact her ability to work. Doc. 17 at 10. However, Plaintiff's failure to point out at the hearing any deficiencies in the hypothetical question does not "automatically salvage[] that hypothetical as a proper basis for a determination of non-disability." *Boyd*, 239 F.3d at 707 (interpreting *Bowling*, 36 F.3d at 436). Indeed, "[t]he

12

ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "If the ALJ does not satisfy this duty, his decision is not substantially justified." *Boyd,* 239 F.3d at 708 (quoting *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir. 2000)).

While the VE may have testified that an individual with occasional monocular vision could perform the work of a school secretary, the Court "simply cannot speculate how the VE would have responded" to a hypothetical including this limitation. *Singleton v. Colvin*, No. 2:15-CV-268, 2016 WL 8674675, at *5 (N.D. Tex. Sept. 9, 2016) (Averitte, J.). "[N]or can the [C]ourt speculate how the ALJ would have ruled if the VE's testimony was based on a non-defective hypothetical." *Id.* Because the ALJ relied on the VE's answers to hypothetical questions that failed to reasonably incorporate all the limitations recognized by the ALJ and supported by the record, his determination that Plaintiff can perform her past relevant work is not supported by substantial evidence. Thus, remand is warranted on this issue.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED**, and this case is **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED** on March 30, 2026.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

13